IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ALEX HOLT, MICHELLE DANIELS, LARRY WASHINGTON, MARKO FREEMAN, JOHN POINDEXTER, NIKKI SYKES, PAULA SBABO, WO DAVIS, JOHN AGAPOS, PAULA JOHNSON, SHAWNTA POWELL, CELESTE HINES, JENNIFER SPONSELLER, MARNETTA JACKSON, FLORENCE MIMS, CONSTANCE HUNTER, CASSANDRA MCCLINTON, SHAY TUCKER, REGINA LUCKETT, and ASHLEY MARTIN, on behalf of themselves and others similarly situated,<br><br>           Plaintiffs,<br><br>vs.<br><br>WAFFLE HOUSE, INC., a Georgia corporation, WH CAPITAL, LLC, a Georgia limited liability company, THE SOURCE FOR PUBLIC DATA, L.P. dba PUBLICDATA.COM, a foreign limited partnership, SHADOWSOFT, INC., a foreign corporation, HARLINGTON-STRAKER-STUDIO, INC., a Texas corporation, and DALE BRUCE STRINGFELLOW, an individual,<br><br>           Defendants. | Case No.: 6:17-cv-693-ORL-37-TBS |

## CLASS ACTIION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Michelle Daniels, Alex Holt, Larry Washington, Marko Freeman, John Poindexter, Nikki Sykes, Paula Sbabo, Cassandra McClinton, Wo Davis, John Agapos, Paula Johnson, Shawnta Powell, Celeste Hines, Marnetta Jackson, Florence Mims, Constance Hunter, Shay Tucker, Regina Luckett, and Ashley Martin (hereinafter, "Plaintiffs"), on behalf of

themselves and all others similarly situated, complains of defendants Waffle House, Inc., a Georgia corporation, and WH Capital, LLC, a Georgia limited liability corporation (together, "Waffle House"), The Source for Public Data, L.P. dba PublicData.com, a foreign limited partnership, ShadowSoft, Inc., a foreign corporation, Harlington-Straker Studio, Inc., a Texas corporation, and Dale Bruce Stringfellow, an individual (collectively, "PublicData") (all defendants are collectively referred to herein as "Defendants") as follows:

## NATURE OF ACTION

1. This class action arises from Waffle House's acquisition and use of consumer and/or investigative consumer reports (referred to collectively as "background reports") from PublicData, a consumer and investigative consumer reporting agency, to conduct background checks on Plaintiffs and current and former employees.

2. Waffle House routinely obtains and uses information from background reports in connection with its hiring processes without complying with state and federal mandates for doing so.

3. Plaintiffs, individually and on behalf of all other members of the public similarly situated, seek compensatory and punitive damages resulting from Waffle House's systematic and willful violation of the Fair Credit Reporting Act ("FCRA").

4. Waffle House has violated the requirements under the FCRA in numerous ways— most conspicuously by failing to provide proper disclosures to applicants and/or employees prior to taking adverse actions against them.

5. The FCRA requires users of consumer reports to follow certain procedures and provide certain disclosures prior to adverse actions against current and former employees based in whole or in part on information in their consumer reports.  Among other things, prior to taking

an adverse action, an employer must provide a "pre-adverse action" notice, which includes a copy of the consumer report and a current version of the FCRA Summary of Rights promulgated by the Federal Trade Commission ("FTC") and Bureau of Financial Protection.

6. Waffle House failed to provide a copy of the consumer report and/or a current version of the FCRA Summary of Rights prior to taking an adverse action against Plaintiffs, namely, refusal to hire Plaintiffs.  For these reasons, among others, Waffle House's failure to provide any pre-adverse action notice violates the law.

7. As further alleged herein, Waffle House has willfully failed to follow the statutory mandates before seeking, acquiring, and utilizing background reports to make employment decisions; violated the express and unambiguous provisions of the relevant statutes; and/or failed to implement reasonable procedures to assure compliance with statutory mandates.

8. Because of Waffle House's wrongful acts and omissions, Plaintiffs and other putative class members have been injured, including, without limitation, having their privacy and statutory rights invaded in violation of the FCRA.

9. Shockingly, during the relevant time period Waffle House used a shady, off-shore consumer reporting agency called PublicData to perform background checks on applicants and employees.  Not only does PublicData itself violate the FCRA in numerous ways, it also disclaims any obligation to comply with that statute, providing slipshod consumer reports for literally "pennies" on the dollar.[1]  Waffle House's choice of this illegal consumer reporting agency to screen employees and job applicants is obviously an attempt to tamp down the cost of doing business, at the expense of the rights of Plaintiffs and putative class members.

10. Plaintiffs seek on behalf of themselves and putative class members statutory

---

[1] *See* http://www.publicdata.com/faq.html (last accessed April 14, 2017).

and/or actual damages, punitive damages, the costs of suit, and reasonable attorney's fees, as well as additional and further relief that may be appropriate.  Plaintiffs reserve the right to amend this Complaint to add additional relief as permitted under applicable law.

## PARTIES

11. At all times mentioned herein, Waffle House, Inc. was and is a Georgia corporation with its principal place of business in Norcross, Georgia and was, at all times relevant to this Complaint, engaged in commercial transactions throughout the United States of America, including in the State of Florida.

12. At all times mentioned herein, WH Capital, LLC was and is a Georgia limited liability corporation with its principal place of business in Atlanta, Georgia and was, at all times relevant to this Complaint, the parent company of Waffle House, Inc.  Based upon information and belief, all individual members of WH Capital, LLC are citizens of states other than Florida. Based on publicly available information, the citizenship of each individual member of WH Capital, LLC cannot be confirmed at this time. The citizenship of each individual member of WH Capital, LLC will be determined throughout the course of discovery.

13. At all times mentioned herein, The Source for Public Data, L.P. dba Publicdata.com was and is a foreign corporation with a registered agent for service in Texas, and was, at all times relevant to this Complaint, engaged in the preparation and sale of consumer reports throughout the United States of America, including in the State of Florida.

14. At all times mentioned herein, ShadowSoft, Inc. was and is a foreign corporation with a registered agent for service in Texas, and was, at all times relevant to this Complaint, engaged in the preparation and sale of consumer reports throughout the United States of America, including in the State of Florida.

15. At all times mentioned herein, Harlington-Straker Studio, Inc. was and is a Texas corporation with a registered agent for service in Irving, Texas, and was, at all times relevant to this Complaint, the principal owner of Publicdata.com and Shadowsoft, companies engaged in the preparation and sale of consumer reports throughout the United States of America, including in the State of Florida.

16. At all times mentioned herein, Dale Bruce Stringfellow was and is a Texas resident and, at all times relevant to this Complaint, the owner, founder, and operator of Publicdata.com and Shadowsoft, companies engaged in the preparation and sale of consumer reports throughout the United States of America, including in the State of Florida.

17. At all times mentioned herein Plaintiffs resided throughout the United States of America, including in the State of Florida.

<u>**JURISDICTION AND VENUE**</u>

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

19. This Court also has jurisdiction pursuant to 28 U.S.C. § 1441(a) based on 18 U.S.C. § 1332(d).  This is a putative class action whereby:  (i) the proposed nationwide class consists of more than 100 members; (ii) at least some class members have a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000.00 in the aggregate.

20. Venue is proper pursuant to 28 U.S.C. §§ 89(b) and 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.  Plaintiffs Alex Holt and Michelle Daniels, who are domiciled in the State of Florida, applied to work in the Middle District of Florida during the relevant time period and suffered the harms alleged in the Complaint in this judicial district.

21. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because

Defendants, and each of them, are subject to the Court's personal jurisdiction with respect to this action and therefore reside in this judicial district under subdivision (c)(2) of section 1391.

## FACTUAL BACKGROUND

### *Facts Regarding Waffle House*

22. Plaintiffs applied for employment with Waffle House at various times from at least March 2010 to the present. As part of the hiring process, Waffle House conducted background checks on Plaintiffs and other members of the proposed class. In conducting the background check, Waffle House procured or caused to be prepared background reports (i.e., consumer reports or investigative consumer reports, as defined by 15 U.S.C. § 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e).

23. As a matter of company policy Waffle House obtained background reports on all job applicants during the time period relevant to this Complaint and has regularly used PublicData to prepare such background reports.

24. During the relevant time period Waffle House had a policy or practice of obtaining background reports without providing proper disclosures from Plaintiffs and without obtaining their authorization to obtain background reports, as required under 15 U.S.C. § 1681b(b)(2)(A). Plaintiffs Marnetta Jackson, Regina Luckett, Ashley Martin, John Poindexter, Larry Washington, John Agapos, Shawnta Powell, Cassandra McClinton, Shay Tucker, and Marko Freeman did not receive a disclosure that Waffle House would obtain background reports on them and/or did not authorize Waffle House to procure background reports.

25. Waffle House had a policy of denying applicants from employment who had disqualifying criminal convictions on their background reports.

26. Upon information and belief, Waffle House relied on background reports that it

obtained on each and every Plaintiffs named herein and on other members of the proposed class to deny them employment.

27. Waffle House informed Plaintiffs Michelle Daniels, Constance Hunter, Alex Holt, Shawnta Powell, Wo Davis, Paula Sbabo, John Agapos, Regina Luckett, Florence Mims, Ashley Martin, Shay Tucker, John Poindexter, Larry Washington, Nikki Sykes, and Marko Freeman that Waffle House would not hire them because of information in their background reports.  Waffle House told Paula Johnson that she was "not employable," upon information and belief, because of information in her background report.

28. Moreover, Plaintiffs Jennifer Sponseller, Celeste Hines, and Marnetta Jackson believe that Waffle House relied on a record of criminal convictions contained in their background reports, whether or accurate or not, to deny them employment.

29. Despite Waffle House's intent to take an adverse action against Plaintiffs and other putative class members based on information in their background reports, Waffle House did not provide them with copies of their reports before taking adverse action or the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection, as required by section 1681b(b)(3)(A) of the FCRA.

30. Waffle House's violation of the FCRA as alleged herein was willful.  Waffle House was aware of its obligations under the FCRA through, *inter alia*, the express language of the statute; numerous guidance documents issued by the FTC; judicial opinions predating Waffle House's conduct; Waffle House's communications with consumer reporting agencies apprising Waffle House of its FCRA obligations; and previous lawsuits filed against Waffle House for consumer-reporting violations.  Nevertheless, Defendant systematically failed to comply with the requirements under the FCRA.

*Facts Regarding PublicData*

31. PublicData operates a website that allows users to search for consumers based on several categories, including name, email address, and phone number.  Such reports may contain numerous items of information, including but not limited to age, employer, current and previous addresses, phone numbers, email addresses, arrest and conviction records, the identity of relatives, property records, marriage and divorce records, and lawsuit records.

32. PublicData offers an online service allowing consumers to request background checks about virtually any person in the United States.  In response to a request, PublicData obtains information from various sources and assembles it into detailed reports that it provides to users.   These reports contain private, sensitive, and often erroneous information, including but not limited to residential history, birth dates, criminal records, tax records, driver's license numbers, DMV records, professional license records, civil suits, and voter registration information.

33. PublicData maintains no policies or procedures whatsoever to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA.

34. Instead, PublicData claims that it is not consumer reporting agency, does not sell consumer reports, and is not subject to the FCRA.

35. PublicData contends that it merely re-sells public, government compiled records, and that the government is responsible for any errors and inaccuracies in the records, and that any requests for correction must be made through the government agency supplying the record. PublicData portrays itself as some sort of government watchdog providing the public with government data under the Freedom of Information Act.

36. But what PublicData really provides is sensitive personal, financial, and legal

information regarding individuals. The information is the same information contained in consumer reports sold by recognized consumer reporting agencies and the information in PublicData's reports is compiled from the same sources as the major three consumer reporting agencies' reports.

37. Moreover, customers of PublicData, use the reports it generates for the same purposes as users of other consumer reports—to make decisions regarding employment and extension of credit, among other things.

38. Nonetheless, PublicData maintains absolutely no policies and procedures to ensure that reports comply with the standards set forth in the FCRA—that they are complete, accurate, and up to date; that purchasers of the reports may use them only for an FCRA-approved purpose and certify that they are doing so; and that procedures exist for consumers to dispute information in their reports, for the agency to investigate disputes and make corrections, and for consumers to obtain timely copies of their reports and notice of their rights to dispute and correct errors.

39. Indeed, PublicData contends that it is free to ignore the FCRA entirely because it maintains that FCRA does not apply to it.   This is because PublicData has structured itself as an off-shore entity and operates in the U.S. through a network of sham companies designed to put its assets out of reach and, it believes, itself out of reach of legal liability.   PublicData is incorporated in the West Indies, and its general partner is a shell corporation incorporated in Texas, Harlington-Straker, which in turn is wholly owned by Stringfellow.

40. Publicdata.com sells over 50 million consumer reports a year, yet has no physical building, employees, or assets.  Publicdata.com is owned and controlled by Stringfellow, who, through his shell corporation Shadowsoft, purchases and assembles all the public records and

uploads them onto PublicData's Internet servers without regard for the user of the accuracy of the consumer report.   Both PublicData and Harlington-Straker are sham entities, whose operations are conducted by Stringfellow and Shadowsoft, neither of which has a direct interest in PublicData.   Stringfellow, Shadowsoft, and Harlington-Straker are alter egos of PublicData and, following discovery, evidence will be adduced sufficient to pierce the corporate veil and hold each entity liable for the misconduct of PublicData.

41. Despite PublicData's practice of compiling, creating, and selling consumer reports, PublicData openly admits that it has absolutely no policies or procedures whatsoever to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA. Instead, PublicData asserts that it is not a consumer reporting agency regulated by the FCRA and is thus not subject to the FCRA. Consistent with this policy, PublicData refuses to reinvestigate or correct erroneous information in consumer's reports pursuant to 16 USC § 1681i, refuses to provide prompt notices of dispute to furnishers of information pursuant to that section, refuses to provide notices to consumers of the results of a reinvestigation, and refuses to include statements of dispute when providing consumer reports containing the information in question, among other obligations.

42. Indeed, PublicData staunchly maintains that it "is not responsible for any inaccuracies in any database.   PublicData will NOT modify records in any database upon notification of inaccuracies from individuals." [2]

43. 15 U.S.C. § 1681k(a)(1) requires that when consumer reporting agencies such as PublicData sell a consumer report to prospective employers such as Waffle House here, the consumer reporting agency must notify the consumer that it is furnishing a consumer report

---

[2] *See* http://www.publicdata.com/faq.html (last accessed April 14, 2017).

about them for employment purposes at the time it provides the prospective employer with the report. This is intended to provide consumers with immediate notice of the furnishing of the employment report and information necessary to preemptively contact the consumer reporting agency to correct information contained in the consumer report. This requirement also alerts the consumer to the employer's use of the consumer report and allow the consumer the opportunity to address any concerns in the report with the prospective employer.

44. Alternatively, a consumer reporting agency may choose to comply with 15 U.S.C. § 1681k(a)(2) and "maintain strict procedures designed to insure" that public record information that affects employment, such as arrests and convictions, "is complete and up to date." But PublicData maintains no procedures whatsoever to ensure that public records data is "complete and accurate," let alone "strict procedures" to do so. Indeed, PublicData expressly disclaims any responsibility for the accuracy or completeness of the records it sells, purporting to foist the duty solely on the government agencies creating the records and advising consumers and report users to contact the government agencies regarding inaccuracies.

45. 15 U.S.C. § 1681b(b)(1)(A) requires PublicData to obtain certifications from a user of consumer reports such as Waffle House before providing a consumer report for employment purposes that (i) the user provided the consumer a clear and conspicuous disclosure that the report would be used for employment purposes; (ii) that before taking adverse action, the user will provide the consumer a copy of the report and description of rights under the FCRA; and (iii) the information will not be used in violation of any federal or state laws. Consumer reporting agencies such as PublicData may only furnish a consumer report for employment purposes if the consumer reporting agency provides the consumer with a summary of rights under the FCRA.

46. 15 U.S.C. § 1681e(a) requires consumer reporting agencies like PublicData to maintain procedures by which users of the report identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose.  It requires PublicData to make a reasonable effort to verify the identity of the user of the consumer report and the user's use of the report before furnishing the consumer report.

47. 15 U.S.C. § 1681e(d) requires that consumer reporting agencies such as PublicData provide notice to users of consumer reports such as Waffle House here of the user's responsibilities in using the report, under the FCRA.

48. PublicData's conduct in violation of the FCRA was and is willful in that PublicData acted in reckless disregard of its legal obligations.  Statements on PublicData's website show that it was aware of the FCRA's requirements but refused to comply with them despite its ability to do so.

### CLASS ACTION ALLEGATIONS

49. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons residing in the United States who applied for employment with or were employed by Waffle House within the longest applicable limitations period and on whom Waffle House procured background reports ("Improper Authorization Class").

50. Plaintiffs brings this action as a class action against Waffle House pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons residing in the United States who applied for employment with or were employed by Waffle House within the longest applicable limitations period against whom Defendant took adverse employment actions based in whole or in part on information contained background reports ("FCRA Adverse Action Class").

51. Plaintiffs bring this action as a class action against PublicData pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States within the longest applicable limitations period who (a) have had information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled or displayed by PublicData and (b) were the subject of a report sold by PublicData to a third party that was furnished for an employment purpose.  ("Public Data Class").

52. Members of the classes, as described above, will be referred to as "class members."  Excluded from the classes and subclasses are:  (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.  Plaintiffs reserve the right to amend the above classes and subclasses and to add additional subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

53. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the classes and subclasses are easily ascertainable.

A. **Numerosity**

54. Although the precise number of class members has not been determined at this time, Plaintiffs estimate that the classes and subclasses consists of thousands of members and that the identity of such persons is readily ascertainable by inspection of Defendants' records. Therefore it is reasonable that the class members are so numerous that joinder is impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

### B.      Common Questions Predominate

55. There are questions of law and fact common to the class that predominate over any questions affecting only individual putative class members.  Thus proof of a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to:

a.      Whether Waffle House violated section 1681b(b)(2)(A)(i) of the FCRA by failing to provide appropriate disclosures to applicants and employees of its intent to procure consumer reports or investigative consumer reports;

b.      Whether Waffle House violated section 1681b(b)(2)(A)(ii) of the FCRA by failing to obtain authorization from applicants and employees on whom Waffle House procured consumer reports or investigative consumer reports;

c.      Whether Waffle House violated section 1681b(f) of the FCRA by failing to supply the appropriate certifications to Public Data or other consumer reporting agencies;

d.      Whether Waffle House violated the FCRA by failing to provide class members with the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection; and

e.      Whether Waffle House violated section 1681b(b)(3)(A) of the FCRA by failing to provide applicants and employees with copies of their consumer reports or investigative consumer reports before taking adverse action, as required by section 1681b(b)(3)(A) of the FCRA.

56. There are questions of law and fact common to the PublicData class that predominate over any questions affecting only individual putative class members.  Thus proof of

a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to:

a.   Whether PublicData violated section 1681k(a) of the FCRA by failing to either provide class members with notice of the furnishing of a consumer report to their potential employer, or maintain "strict procedures" to insure the completeness and accuracy of the public records it sold;

b.   Whether PublicData violated section 1681e(b) of the FCRA by failing to use reasonable procedures to ensure maximum possible accuracy in publishing consumer reports;

c.   Whether PublicData violated section 1681b(b)(1)(A) of the FCRA by failing to obtain certifications from the users of its consumer reports before providing consumer reports for employment purposes that (i) the users provided the consumer a clear and conspicuous disclosure that the report would be used for employment purposes; (ii) that before taking adverse action the users would provide the consumer a copy of the report and description of rights under the FCRA; and (iii) the information would not be used in violation of any federal or state laws;

d.   Whether PublicData violated section 1681e(a) of the FCRA by failing to maintain procedures by which users of the report identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose; and

e.   Whether PublicData violated section 1681e(d) of the FCRA by failing to provide notice to users of consumer reports of the user's responsibilities under the FCRA in using the report.

**C.   Typicality**

57. Plaintiffs' claims are typical of the claims of the putative class members because Waffle House failed to provide Plaintiffs with the requisite disclosures and engaged in adverse action against them without complying with the disclosure requirements under the FCRA, and without providing valid certifications that any consumer report would not be used for a prohibited purpose under the FCRA.  Plaintiffs' claims against PublicData are typical of those of the class because on information and belief PublicData issued consumer reports about Plaintiffs to a prospective employer (i.e., Waffle House) without obtaining valid certification as to permissible purpose from Waffle House, failed to maintain strict procedures to insure the accuracy of the records regarding Plaintiffs that it sold; failed to provide Plaintiffs notice of the furnishing of their consumer report to Waffle House and notice of their rights; and failed to maintain procedures by which Plaintiffs could contact PublicData to challenge errors in their consumer reports.

58. Plaintiffs and each class member sustained similar injuries arising out of Waffle House's and PublicData's conduct in violation of law.  The injuries of each class member were caused directly by Waffle House's and PublicData's wrongful conduct.  In addition, the factual underpinning of Waffle House's and PublicData's misconduct is common to all putative class members and represent a common thread of misconduct resulting in injury to all class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D.      Adequacy**

59. Plaintiffs will fairly and adequately represent and protect the interests of the classes and subclasses.   Counsel who represent Plaintiffs and putative class members are experienced and competent in litigating class actions.

**E.      Superiority of Class Action**

60. A class action is superior to other available means for the fair and efficient adjudication of this controversy.   Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members.   Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein.   Moreover, because the damages suffered by individual members of the classes and subclasses may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the classes and subclasses to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

61. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met because questions of law and fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   Plaintiffs is unaware of any difficulties in managing this case that should preclude class action.

## COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681b(b)(2)(A)

*(Brought Against Waffle House on Behalf of the Improper Authorization Class)*

62. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

63. Defendant is a "person" as defined by Section 1681a(b) of the FCRA.

64. Plaintiffs and class members are "consumers" within the meaning Section 1681a(c) of the FCRA, because they are "individuals."

65. Section 1681b(b)(2)(A) of the FCRA provides, in relevant part:

(b) Conditions for furnishing and using consumer reports for employment purposes.
…
(2) Disclosure to consumer

(A) In general

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.  (Emphasis Added.)

66. As alleged above, Waffle House violates Section 1681b(b)(2)(A) of the FCRA by failing to provide Plaintiffs and class members with a clear and conspicuous written disclosure before a consumer report is procured or caused to be procured that a consumer report may be obtained for employment purposes in a document that consists solely of the

disclosure.

67. Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Waffle House has a policy and practice of failing to provide adequate written disclosures to applicants and employees before procuring consumer reports or causing consumer reports to be procured.  Pursuant to that policy and practice, Waffle House procured consumer reports or caused consumer reports to be procured for Plaintiffs and class members without first providing a written disclosure in compliance with Section 1681b(b)(2)(A) of the FCRA.

68. As alleged above, Waffle House's conduct in violation of Section 1681b(b)(2)(A) of the FCRA was and is willful in that Waffle House acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members.

69. As a result of Waffle House's illegal procurement of background reports by way of their inadequate disclosures, as set forth above, Plaintiffs and class members have been injured, including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.  Plaintiffs and class members did not know that Waffle House would procure a consumer report or investigative consumer report or did not understand or appreciate what that meant.

70. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

71. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any,

under 15 U.S.C. Section 1681o.

## COUNT II

## VIOLATION OF THE FAIR CREDIT REPORTING ACT,

## 15 U.S.C. § 1681b(f)

### *(Brought Against Waffle House on Behalf of the Improper Authorization Class Only)*

72. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

73. Waffle House is a "person" as defined by Section 1681a(b) of the FCRA.

74. Plaintiffs and class members are "consumers" within the meaning Section 1681a(c) of the FCRA because they are "individuals."

75. Section 1681b(b)(f) of the FCRA provides, in relevant part:

(f) Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless
…
(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
(2) the purpose is certified in accordance with section 607 [§ 1681e] by a prospective user of the report through a general or specific certification.

76. As alleged above, Waffle House violates Section 1681b(f) of the FCRA by obtaining consumer reports on Plaintiffs and the class without providing proper certifications to the consumer reporting agency regarding the use of the consumer reports.

77. On information and belief and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Waffle House has a policy and practice of procuring consumer reports or causing consumer reports to be procured for applicants and employees without providing certification to consumer reporting agencies as required under section 1681b(f) of the FCRA.

78. Waffle House's conduct in violation of Section 1681b(f) of the FCRA was and is willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiffs and class members.

79. As a result of Waffle House's illegal procurement of background reports by way of its failure to make proper certifications as to proper purpose, as set forth above, Plaintiffs and class members have been injured, including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.

80. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

81. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## COUNT III

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681b(b)(3)(A)

*(Brought Against Waffle House on Behalf of the Adverse Action Class Only)*

82.  Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

83. Section 1681a(k)(1)(B)(ii) of the FCRA defines "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."

84. Section 1681b(b)(3)(A) of the FCRA requires that anyone attempting to take any

adverse action based in whole or in part on a consumer report must first "provide to the consumer to whom the report relates a copy of the report; and a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Bureau of Financial Protection] under section 1681g(c)(3) of this title," i.e., the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

85. Waffle House has a policy and practice of taking adverse actions against applicants and employees, including Plaintiffs and other members of the putative class, based in whole or in part on a consumer report without first providing them with a copy of their consumer reports or a current version of the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

86. Waffle House's conduct in violation of Section 1681b(b)(3)(A) of the FCRA was and is willful.  Waffle House acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiffs and class members.

87. As a result of Waffle House's inadequate disclosures prior to taking adverse action against Plaintiffs and class members, Plaintiffs and class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.  Plaintiffs and class members have been injured in that Waffle House's conduct caused a material diminishment in their employment prospects without being fully informed of their statutory rights or having an opportunity to invoke those rights and reverse any adverse employment action taken by Waffle House.  For example, upon information and belief, Waffle House refused to hire Plaintiffs as a result of information contained in their consumer reports without giving them an opportunity to identify and explain or seek correction of errors in their reports.  Because of Waffle House's inadequate disclosures, Plaintiffs and class members were

deprived of the opportunity take advantage of their statutory rights.

88. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

89. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**COUNT IV**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C. §§ 1681e(a)**

***(Brought Against PublicData on Behalf of the PublicData Class)***

90. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

91. The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* was enacted in 1970 to ensure, among other things, that "consumer reporting agencies" adhere to strict guidelines for maintaining and distributing fair and accurate consumer reports.

92. The FCRA creates a set of individual consumer rights and a private right of action by which to vindicate those rights.

93. PublicData is a "consumer reporting agency" ("CRA") as defined by the FCRA because it assembles or evaluates consumer reports and investigative consumer reports for the purpose of providing them to third parties and uses means or facilities of interstate commerce for the purpose of preparing and furnishing those reports.  *See* 15 U.S.C. § 1681a(f).

94. The data PublicData compiles, distributes, and/or sells to third-parties constitutes

"consumer reports" as defined by the FCRA because its reports contain "written, oral, or other communication[s] of … information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d).

95. Section 1681e(a) requires that every CRA maintain reasonable procedures to limit the furnishing of consumer reports to the purposes listed under section 1681b (relating to permissible purposes for procuring consumer reports).  These procedures mandate that the CRA, prior to furnishing a user with a consumer report, require the prospective users of the information to identify themselves to the CRA, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose.  The CRA must make a reasonable effort to verify the identity of each new prospective user and the uses certified prior to furnishing such user a consumer report.

96. PublicData failed to maintain reasonable procedures to limit the furnishing of consumer reports for permissible purposes. For example, PublicData failed to require that prospective users of its reports identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.  In this way, PublicData violated 15 U.S.C. §§ 1681e(a).

97. PublicData's conduct in violation of sections 1681e(a) of the FCRA was and is willful.  PublicData acted in deliberate or reckless disregard of its obligations and the rights of

applicants and employees, including Plaintiffs and class members.  PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

98. As a result of PublicData's conduct described herein and its willful violations of sections 168eb(a), Plaintiffs and the class have suffered harm as described herein.

99. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

100. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## COUNT V

## VIOLATION OF THE FAIR CREDIT REPORTING ACT,

## 15 U.S.C. § 1681e(d)

### *(Brought Against PublicData on Behalf of the PublicData Class)*

101. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

102. Section 1681e(d)(1) of the FCRA requires that a CRA provide, to any person who regularly and in the ordinary course of business furnishes information about any consumer to the consumer reporting agency ("Furnisher"), a "Notice to Furnishers of Information:

Obligations under the FCRA" ("Furnisher Notice").[3]

103. Section 1681e(d)(2) requires that a CRA provide, to any person to whom it provides a consumer report ("Users"), a "Notice to Users of Consumer Reports:  Obligations to Users under the FCRA" ("User Notice").[4]

104. The Furnisher Notices and User Notices inform Furnishers and Users of their responsibilities under the FCRA, such as a Furnisher's responsibility to provide accurate information or a User's responsibility to provide notices relating to adverse action.

105. Upon information and belief, PublicData has failed to provide Furnisher Notices to Furnishers as required by the FCRA.

106. Upon information and belief, PublicData has failed to provide User Notices to Users as required by the FCRA.

107. PublicData's conduct in violation of section 1681e(d) of the FCRA was and is willful.  PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiffs and class members.  PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

108. As a result of PublicData's conduct described herein and its willful violations of Sections 1681e(d), Plaintiffs and the class have suffered harm as described herein.

109. Plaintiffs, on behalf of themselves and all class members, seek all available

---

[3] *See* https://www.gpo.gov/fdsys/pkg/CFR-2000-title16-vol1/pdf/CFR-2000-title16-vol1-part601.pdf (last visited Apr. 14, 2017).

[4] *Id.*

remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

110. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## COUNT VI

## VIOLATION OF THE FAIR CREDIT REPORTING ACT,

## 15 U.S.C. § 1681b(b)(1)

### (Brought Against PublicData on Behalf of the PublicData Class)

111. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

112. Section 1681b(b)(1) provides that a CRA may not furnish a consumer report for employment purposes unless the person who obtains the report certified to the CRA that the he or she has complied with certain disclosure requirements set forth in section 1681b(b)(2) and the adverse action requirements set forth in section 1681b(b)(3), and also certifies that the information from the consumer report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.  The CRA must also provide with the report the FCRA Summary of Rights promulgated by the FTC and Bureau of Consumer Financial Protection.

113. The foregoing disclosure requirements are mandated in order to inform consumers that a consumer report may be used for employment purposes and inform employers that they must provide consumers with certain information if any adverse action is taken based in whole or in part on the report.

114. PublicData has furnished consumer reports for employment purposes but has failed to comply with section 1681b(b)(1).  PublicData has failed to obtain certifications from persons who procure consumer reports for employment purposes (such as Waffle House) ensuring compliance with sections 1681b(b)(2) and 1681b(b)(3), nor did PublicData provide such persons with the FCRA Summary of Rights promulgated by the FTC and Bureau of Consumer Financial Protection.

115. PublicData's conduct in violation of section 1681b(b)(1) of the FCRA was and is willful.  PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiffs and class members.  PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

116. As a result of PublicData's conduct described herein and its willful violations of Sections 1681b(b)(1), Plaintiffs and the class have suffered harm as described herein.

117. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

118. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## COUNT VII

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681 j(a)(1)(C) and 16 C.F.R. § 610.3

*(Brought Against PublicData on Behalf of the Public Data Class)*

119. Plaintiffs hereby re-allege the allegations contained in paragraphs one (1) through sixty-one (61) of this Complaint and incorporate the same by reference as though set forth at length herein.

120. Upon information and belief, PublicData is also a "nationwide specialty consumer reporting agency" as defined by the FCRA because it is "a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to (1) medical records or payments; (2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims." 15 U.S.C. § 1681a(w).

121. Section 1681j(a)(1)(C) of the FCRA directs the Federal Trade Commission ("FTC") to establish streamlined processes for consumers to request free annual file disclosures. The FTC promulgated the Streamlined Process Rule, which is codified at 16 C.F.R. § 610.3. The rule requires, among other things, that a nationwide specialty CRA (like PublicData, which maintains address histories of the persons in its database) provide consumers with a toll-free number to request annual file disclosures and that the telephone number is prominently posted on any website owned or maintained by the nationwide specialty consumer reporting agency, as well as instructions to request disclosures by any additional available request methods. 16 C.F.R. § 610.3(a)(1).

122. PublicData has failed to establish the processes required by the Streamlined Process Rule. PublicData has failed to post a toll-free telephone number on its website through which consumers can request free annual file disclosures.

123. PublicData's conduct in violation of the Streamlined Process Rule was and is willful. PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiffs and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

124. As a result of PublicData's conduct described herein and its willful violations alleged hereinabove, Plaintiffs and the class have suffered harm as described herein.

125. Plaintiffs, on behalf of themselves and all class members, seek all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

126. In the alternative to Plaintiffs' allegation that these violations were willful, Plaintiffs allege that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the putative classes, pray as follows:

A.      For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed the class representatives, and that Plaintiffs' counsel be appointed counsel for the classes;

B.      For a declaration that Defendants' practices violate the FCRA;

C.      For order enjoining Defendants from violating the FCRA;

D.      For an award of statutory, compensatory, special, general, and punitive damages according to proof against Defendants;

E.      For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

F.      For an award of pre- and post-judgment interest; and

G.      For such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:   April 14, 2017                      Respectfully submitted,

By: ___*s/ Michael J. Pascucci*_____
       Michael J. Pascucci (Trial Counsel)
       Fla. Bar No. 83397
       Joshua H. Eggnatz
       Fla. Bar. No.: 0067926
       EGGNATZ, LOPATIN & PASCUCCI, LLP
       5400 S. University Drive, Ste. 417
       Davie, FL 33328
       Tel:  (954) 889-3359
       Fax:  (954) 889-5913
       Mpascucci@ELPLawyers.com
       JEggnatz@EggnatzLaw.com

       Anthony J. Orshansky* (Trial Counsel)
       Alexandria R. Kachadoorian*
       Justin Kachadoorian* (Trial Counsel)
       COUNSELONE, PC
       9301 Wilshire Boulevard Suite 650
       Beverly Hills, CA 90210
       T: 310.277.9945
       F: 424.277.3727
       anthony@counselonegroup.com
       alexandria@counselonegroup.com

justin@counselonegroup.com

*\* Pro hac vice motions to be filed*

*Attorneys for Plaintiffs and the Proposed Class*